Faye LYONS, Appellant,

v.

Elsinore C. Machris GILLILAND, also known as Elsinore Machris Gilliland, Appellee.

No. 17362.

United States Court of Appeals Ninth Circuit.

June 1, 1962.

Rehearing Denied July 9, 1962.

Welburn, Mayock, and W. S. Mayock, Los Angeles, Cal., for appellant.

Charles W. Wolfe and George R. Larwill, Los Angeles, Cal., for appellee.

Before BARNES, HAMLEY and BROWNING, Circuit Judges.

PER CURIAM.

This is an appeal by plaintiff in a diversity action for libel from a judgment based on a jury verdict, holding that the libel charged was untrue, but that its publication was privileged.

■ The libel charged appellant with acts of adultery committed with appellee's then husband. The words were libelous per se, and their publication admitted in a cross-complaint in a divorce action. Their alleged privilege rests upon their publication *only* in a judicial proceeding. Section 47 of the Civil Code of California reads, in pertinent part, as follows:

"47. [Privileged publication * * *: What constitutes]

"A privileged publication * * * is one made—* * *

2. In any * * * judicial proceeding * * *; provided, that an allegation or averment contained in any pleading * * * in an action for divorce * * * made of or concerning a person by or against whom no affirmative relief is prayed in such action shall not be a privileged publication * * * as to the person making said allegation or averment within the meaning of this section unless such pleading be verified * * and be made without malice, by one having reasonable and probable cause for believing the truth of such allegation * * * and unless such allegation * * * be material and relevant to the issues in such action. * * * *"

Materiality and relevancy are undisputed. Appellant's real thrust on this appeal is that there was insufficient evidence that appellee acted without malice, or had reasonable and probable cause for believing the truth of the allegations.

■ Appellee testified* she acted without malice. Appellant argues that wronged wives seldom admit, but almost universally have, "hatred, jealousy and even vindictiveness" against the other woman. This may well be true. If so, it presented a conflict in the evidence. That conflict was for a jury's determination, and solely for a jury's determination. That determination has been made and under well known legal rules is binding on the trial court, and on this court, unless there is *no* substantial evidence, whether contradicted or not, to support the jury verdict. Such a total lack of evidence does not exist in the facts of this case.

We next consider the alleged lack of probable cause for appellee to believe the truth of her allegations. Only evidence known by appellee at the time of publication can be now considered.

When she filed her cross-complaint, Mrs. Gilliland knew the contents of the so-called Lambert statement, plus what her attorney, Mr. Murphey knew,[1] plus, perhaps, a little the neighbors told her. The appellee filed her cross-complaint alleging adultery only after receiving her attorney's advice that she had sufficient evidence to charge adultery.

We need not go into all details here; a few suffice. Mrs. Lambert referred to Mr. Gilliland's "keeping" appellant (a twice married adult) at Paradise Valley Motel; "staying all night up there himself"; appellant coming to Mr. Gilliland's home and staying until two or three o'clock in the morning; their drinking together; that the two kissed on several occasions before Mrs. Lambert; that appellant and Mr. Gilliland took a ten day automobile trip from Scottsdale, Arizona, to Miami, Florida, together; and that on the one occasion Mr. Gilliland "stayed with appellant all night at the Paradise Valley Guest Ranch" Mrs. Lambert saw Mr. Gilliland leave Faye Lyons' room at 7:45 A.M. the next morning.

Of lesser importance, but to set the stage for the foregoing, there was evidence of drinking, arguments, quarreling and fighting, and on at least one occasion, articles being thrown. Mrs. Gilliland knew of her husband's boasts of his conquests of other women; and that he had variously entertained other women—one for three weeks as a house guest.

■■ Under these circumstances, we cannot say, as a matter of law, there was

---

1. Mrs. Lambert stated at the trial she had given Mr. Murphey a sworn statement "of the girls who stayed there and what they did, the same as I gave on the stand." (Tr. p. 235.)

an absolute lack of substantial evidence from which the jury might not have concluded that Mrs. Gilliland was justified in inferring and charging her husband in a court of law of adultery committed with Faye Lyons, or that such a conclusion had no legal basis in fact.

Affirmed.